UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF LOS ANGELES ex rel. RICHARD KNUDSEN,<br><br>Plaintiff,<br><br>v.<br><br>NEW CINGULAR WIRELESS NATIONAL ACCOUNTS, LLC dba CINGULAR WIRELESS, now known as AT&T MOBILITY NATIONAL ACCOUNTS, LLC; and DOES 21–30,<br><br>Defendant. | No. 2:17-cv-00816-TLN-AC<br><br><br>**ORDER** |

This matter is before the Court pursuant to Defendant New Cingular Wireless National Accounts, LLC dba Cingular Wireless, now known as AT&T Mobility National Accounts LLC's ("Defendant") Motion to Dismiss Plaintiff's Complaint in Intervention. (ECF No. 55.) Plaintiff City of Los Angeles ("Plaintiff") filed an opposition. (ECF No. 56.) For the reasons set forth below, the Court hereby GRANTS in part and DENIES in part Defendant's Motion to Dismiss. (ECF No. 55.)

///

///

///

///

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff contracted with Defendant for wireless airtime, wireless data, and equipment. (ECF No. 1-2 ¶ 1.) Plaintiff alleges Defendant agreed to provide Plaintiff with rate plan optimization on a quarterly or routine basis. (ECF No. 1-2 ¶¶ 2, 4.) Moreover, Plaintiff alleges Defendant was to identify the one rate plan among those offered for each wireless customer that would result in the lowest cost to Plaintiff. (ECF No. 1-2 ¶ 4.) Plaintiff further alleges Defendant was contractually obligated to provide Plaintiff with rate plan optimization reports that would permit Plaintiff to purchase wireless services at the lowest cost available. (ECF No. 1-2 ¶ 4.) However, Plaintiff alleges Defendant did not provide rate plan optimization reports to Plaintiff, resulting in millions of dollars of overcharges. (ECF No. 1-2 ¶¶ 5, 7.)

Plaintiff's claims arise from two wireless and related services contracts between Plaintiff and Defendant. The first agreement ("City Contract I") went into effect March 1, 2007. (ECF No. 1-2 ¶ 93.) The parties renewed their agreement on May 1, 2013 ("City Contract II"). (ECF No. 1-2 ¶ 94.) The parties entered into these two wireless service contracts under two group purchasing contracts. The first group purchasing contract was the Western States Contracting Alliance RFP/Contract Number 1523 ("WSCA I"). (ECF No. 1-2 ¶ 48.) The second group purchasing contract was the Western States Contracting Alliance Acting by and Through the State of Nevada and AT&T Mobility RFP/Contract Number 1907 ("WSCA II"). (ECF No. 1-2 ¶ 48.) WSCA I was in effect from 2006 to 2012, and WSCA II took effect in 2012. (ECF No. 1-2 ¶ 48.)

On September 13, 2013, Relator Richard Knudsen filed this CFCA suit on behalf of Plaintiff in the Los Angeles County Superior Court against Defendant, Sprint Solutions, Inc. and Nextel of California, Inc. dba Nextel Communications and Sprint Nextel, and Cellco Partnership dba Verizon Wireless (collectively, "Carrier Defendants"). (ECF No. 55 at 11.) The three cases were consolidated in the Los Angeles County Superior Court. Plaintiff filed a Consolidated Complaint in Intervention ("Complaint") against Carrier Defendants on September 9, 2016. (ECF No. 1-2.)

Plaintiff's Complaint alleges five causes of action against Carrier Defendants: (1) violation of the California False Claims Act ("CFCA") section 12651(a)(1); (2) making false

records and statements in violation of the CFCA section 12651(a)(2); (3) unfair business practices in violation of California Business and Professions Code sections 17200 et seq.; (4) breach of written contract; and (5) unjust enrichment. (ECF No. 1-2 ¶¶ 142–166.)

On October 7, 2016, Carrier Defendants removed the three cases to the United States District Court for the Central District of California. (ECF No. 1.) On April 17, 2017, the three cases were transferred to this Court. (ECF No. 39.) Defendant filed the instant motion to dismiss on June 30, 2017. (ECF No. 55.)

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an

unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge [his or her] claims . . . across the line from conceivable to plausible," is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

///

///

4

**III. ANALYSIS**

As a preliminary matter, Defendant submits several extrinsic documents in support of its motion.[1] (ECF No 55-1.) In its opposition, Plaintiff also submits extrinsic documents.[2] (ECF No. 56-1). Generally, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)). However, a court may consider extrinsic documents on a Rule 12(b)(6) motion when the parties do not contest the authenticity of the documents and the complaint necessarily relies on their contents. *Id*. Here, the contracts at issue and documents involved in formation of those contracts are central to Plaintiff's claims. Moreover, the Court notes that there is no apparent dispute as to the authenticity of the documents provided. Therefore, the Court will consider the relevant extrinsic evidence provided by the parties.

Defendant moves to dismiss all Plaintiff's causes of action with prejudice. Specifically, Defendant argues: (1) the contractual language at issue precludes Plaintiff's claims; (2) Plaintiff fails to adequately plead the elements of a CFCA claim; and (3) Plaintiff fails to allege fraud with

---

[1] Defendant requests the Court take judicial notice of: (1) *Order Granting Motions to Dismiss with Prejudice in Knudsen v. Sprint Communications Co., et al.*, 2016 WL4548924 (N.D. Cal. Sept. 1, 2016); (2) Western States Contracting Alliance (WSCA) Request For Proposal ("RFP") No. 1523 for Wireless Communication Services and Equipment, dated February 8, 2006; (3) State of California's Request for Offer DGS-1070 for Statewide Wireless Products & Services pursuant to WSCA I, dated November 12, 2010; (4) WSCA Wireless Equipment and Services Participating Addendum, Master Price Contract #7-11-70-17, between the State of California and AT&T Mobility, dated May 2011; (5) Amendment No. 1 to WSCA Request for Proposal No. 1523, dated March 1, 2006. Under Federal Rule of Evidence 201, a court can take judicial notice of a document when the subject "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." For the reasons stated in Defendants' request and noting no opposition by Plaintiff, the Court GRANTS Defendants' request, and takes judicial notice of the attached exhibits pursuant to Federal Rule of Evidence 201, (ECF No. 55-1 at 4, 19, 131, 158, 168).

[2] Plaintiff requests the Court take judicial notice of: (1) State of Nevada (as Lead State for the Western States Contracting Alliance) Request for Proposal No. 1907 for Wireless Voice Service, Wireless Broadband Service, Accessories and Equipment, dated February 3, 2011 (with Amendment No. 1) (WSCA II RFP); (2) City of Los Angeles Contract with AT&T Mobility effective March 1, 2007; (3) The *Second Amended Complaint filed in State of California ex rel. OnTheGo Wireless, LLC v. Cellco Partnership, et al.*, Sacramento Superior Court, Case No. 34-2012-00127517 ("OnTheGo") on May 6, 2016; (4) September 13, 2016 *Order on Defendants' demurrer to the Second Amended Complaint in OnTheGo*; and (5) Attachment F to WSCA RFP No. 1523, dated March 1, 2006. Under Federal Rule of Evidence 201, a court can take judicial notice of a document when the subject "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." For the reasons stated in Plaintiff's request and noting no opposition by Defendants, the Court GRANTS Plaintiff's request, and takes judicial notice of the attached exhibits pursuant to Federal Rule of Evidence 201, (ECF No. 56-1 at 5, 69, 75, 195, 218).

particularity under Rule 9(b). (ECF No. 55 at 7–16.) The Court will address each argument in turn.

### A. Contract Interpretation

Under California law, contracts must be interpreted "to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636; *see also ASARCO, LLC v. Celanese Chem. Co.*, 792 F.3d 1203, 1212 (9th Cir. 2015). "It is not the parties' subjective intent that matters, but rather their 'objective intent, as evidenced by the words of the contract.'" *Block v. eBay, Inc.*, 747 F.3d 1135, 1138 (9th Cir. 2014) (quoting *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003)). The words of a contract are interpreted in their ordinary and popular sense unless used by the parties in a technical sense or given special meaning. Cal. Civ. Code § 1644; *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 288 (2014) (citing *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990)). Additionally, contractual language is interpreted in context of the whole contract. *Dep't of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.*, 29 Cal. App. 5th 410, 418 (2018) (citing Cal. Civ. Code § 1641).

In a dispute over the meaning of contractual language, a court must determine "whether the disputed language is reasonably susceptible to the interpretation urged by the party." *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1223 (9th Cir. 2008) (quoting *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 107 Cal. App. 4th 516, 524 (2003)) (internal quotation marks omitted). "Under California law, interpretation of a contract is a two-step process: [f]irst the court provisionally receives . . . all credible evidence concerning the parties' intentions to determine ambiguity . . . . If in light of the extrinsic evidence the court decides the language is reasonably susceptible to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract." *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762, 768 (N.D. Cal. 2010) (internal quotation marks omitted) (quoting *Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1351 (2004)). "Even if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible." *Copart, Inc. v.*

*Sparta Consulting, Inc.*, 339 F. Supp. 3d 959, 976 (E.D. Cal. 2018) (quoting *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 391 (2006)).

Defendant argues that the contractual language at issue does not require Defendant to provide Plaintiff with optimization reports. (ECF No. 55 at 13–15.) Defendant further argues that the contractual language does not entitle Plaintiff to receive services at the lowest cost available. (ECF No. 55 at 15.) Finally, Defendant argues that even assuming the contractual language imparts such requirements, Defendant adequately fulfilled its contractual obligations. (ECF No. 55 at 16.) The Court will address each argument separately.

### *i.  Optimization Report Requirement*

Defendant first argues that the contracts at issue do not include an optimization report provision. (ECF No. 55 at 13.) Plaintiff's causes of action stem primarily from two separate contracts, which the Court will discuss in further detail below.

### a. **City Contract I**

Defendant argues City Contract I's optimization language contains no optimization report requirement. (ECF No. 55 at 13–15.) Plaintiff argues that based on the clear meaning of optimization within the wireless industry, Defendant could not comply with City Contract I's optimization language unless it provided optimization reports to Plaintiff. (ECF No. 56 at 4–6.) Further, Plaintiff states Defendant was expressly required to provide optimization reports to Plaintiff because City Contract I incorporated the terms of the WSCA I. (ECF No. 56 at 6.)

City Contract I's optimization provision states, "Optimization: After the initial plan assignment, [Defendant] will routinely identify those users that are not in the most optimized plan and work with City Department Telephone Coordinators to place users in the most optimized plan." (ECF No. 56-1 at 70.) Defendant argues the optimization provision does not require Defendant to provide optimization reports explicitly. (ECF No. 55 at 9.) However, the Complaint also repeatedly references how rate plan optimization has a specific meaning in the wireless industry and that Defendant knew of this meaning. (ECF No. 1-2 ¶¶ 6, 21, 25, 134.) More specifically, the Complaint alleges Defendant fulfilled its rate plan optimization requirements with private customers by providing optimization reports. (ECF No. 1-2 ¶ 134.)

Plaintiff is not required to prove its claims at this stage. Rather, in ruling on a 12(b)(6) motion, a court determines only whether the operative complaint contains "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Plaintiff's allegations must be taken as true and given the benefit of "every reasonable inference." *Cruz*, 405 U.S. at 322; *Retail Clerks Int'l Ass'n*, 373 U.S at 753 n.6. Although City Contract I's optimization provision did not require optimization reports on its face, Plaintiff's additional factual allegations support at the very least a reasonable inference that the optimization provision contained a latent ambiguity. Indeed, Plaintiff sufficiently nudged its claim "across the line from conceivable to plausible" by alleging Defendant (1) knew that such a provision held special meaning in the industry and (2) fulfilled its rate plan optimization with other customers by providing optimization reports. *Id.* at 680. Thus, the Court finds that City Contract I is reasonably susceptible to Plaintiff's interpretation that the optimization provision required optimization reports. *Halicki Films*, 547 F.3d at 1223.

Moreover, any ambiguity regarding Defendant's obligation to provide optimization reports dissipated once City Contract I incorporated the terms of the WSCA I. The WSCA I provides a subscriber is "[a] using entity who contracts to receive and pay for wireless or walkie-talkie services." (ECF No. 55-1 at 24.) Further, the WSCA I states that a quarterly optimization report for each wireless service subscriber shall be submitted. (ECF No. 55-1 at 26.) Plaintiff is an entity who contracted with Defendant for wireless services, (ECF No. 1-2 ¶ 1), and thus Plaintiff is considered a subscriber. As such, Plaintiff's factual allegations lend a reasonable interpretation that the WSCA I requires a quarterly optimization report be submitted regarding Plaintiff.

In sum, the Court finds that based on the factual allegations in the Complaint, City Contract I is reasonably susceptible to the interpretation that Defendant was required to provide Plaintiff with quarterly optimization reports. Therefore, the Court declines to grant Defendant's motion to dismiss based on City Contract I.

///

///

**b. City Contract II**

City Contract II incorporated the terms of the WSCA II, which contained identical subscriber/reporting statements as the WSCA I discussed above. (ECF No. 57-1 at 11, 14.) For the same reasons, City Contract II is also reasonably susceptible to the interpretation that Defendant was required to provide quarterly optimization reports to Plaintiff.

In sum, Plaintiff's claims regarding Defendant's obligation to provide optimization reports under City Contracts I and II are sufficient to survive Defendant's motion to dismiss.

*ii. "Lowest Cost Available" Requirement*

Defendant next asserts that Plaintiff was not contractually entitled to receive services at the lowest cost available. (ECF No. 55 at 15.) Plaintiff responds that the WSCA contracts contain provisions requiring Defendant to provide service at the "lowest cost available." (ECF No. 1-2 ¶¶ 59, 70.) Labeling it a "specific requirement" that carriers "shall meet," the WSCA I obligated AT&T to "[p]rovide quality wireless equipment and services at the lowest cost available in a timely and efficient manner." (ECF No. 1-2 ¶¶ 58–59.) Plaintiff alleges that the WSCA I's use of "shall" indicated a mandatory requirement. (ECF No. 1-2 ¶ 58.) Plaintiff also alleges that the WSCA II includes a provision that carriers must "[p]rovide quality wireless voice services, wireless broadband services, equipment and accessories at the lowest cost available in a timely and efficient manner." (ECF No. ¶ 71.)

The Court finds that Plaintiff's foregoing factual allegations, taken as true, establish a plausible interpretation that the Defendant was contractually obligated to provide services at the lowest cost available. *Halicki Films*, 547 F.3d at 1223. Such a finding provides grounds to deny Defendant's motion to dismiss. *Iqbal*, 556 U.S. at 697.

*iii. Defendant's Performance of Contractual Obligations*

Defendant claims that even assuming it had a reporting obligation to Plaintiff, it fulfilled any such reporting requirement. (ECF No. 55 at 17.) Defendant argues that it provided information and data though WIN CDs, its "Premier online site," and "Stewardship reports." (ECF No. 55 at 17.)

The Court again emphasizes that its role on a 12(b)(6) motion is not to rule on the merits

of Plaintiff's claims. Rather, the Court's role at this stage is to determine whether Plaintiff's factual allegations, if true, state a plausible claim for relief. *Cruz*, 405 U.S. at 322; *Retail Clerks Int'l Ass'n*, 373 U.S at 753 n.6. Plaintiff alleges that although Defendant provided reports, the reports Defendant provided were insufficient because they did not analyze the cost of service under all available rate plans and identify the lowest cost alternative plan. (ECF No. 1-2 ¶ 119.) Therefore, the Court finds that Plaintiff's Complaint supports a plausible claim based on Defendant's alleged failure to provide Plaintiff with adequate optimization reports. *See Twombly*, 550 U.S. at 570 (holding the plaintiff is not required to allege "'specific facts' beyond those necessary to state his claim").

        B.        <u>Failure to Plead Elements of CFCA Claims</u>

Defendant challenges Plaintiff's CFCA claims on two grounds: (1) Plaintiff failed to plead objectivity falsity; and (2) Plaintiff failed to plead the requisite scienter required by the CFCA. (ECF No. 55 at 18–22.) The Court will address each of Defendant's arguments in turn.

        *i.*        *Objective Falsity*

Defendant asserts Plaintiff's first and second causes of action should be dismissed for lacking objective falsity as required by the CFCA. (ECF No. 55 at 18.) Plaintiff responds its allegations demonstrate objective falsity because the violated contractual terms are not vague, imprecise, or subjective. (ECF No. 56 at 16–19.)

"The CFCA is intended 'to supplement governmental efforts to identify and prosecute fraudulent claims made against state and governmental entities.'" *State ex rel. McCann v. Bank of Am., N.A.*, 191 Cal. App. 4th 897, 903 (2011) (quoting *Rothschild v. Tyco Int'l. (US), Inc.*, 83 Cal. App. 4th 488, 494 (2000)). Thus, "the CFCA must be construed broadly so as to give the widest possible coverage and effect to the prohibitions and remedies it provides." *San Francisco Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.*, 224 Cal. App. 4th 627, 638 (2014) (quoting *San Francisco Unified Sch. Dist. ex rel. Contreras v. Laidlaw Transit, Inc.*, 182 Cal. App. 4th 438, 446 (2010)).

Under the CFCA, any person who knowingly submits a false claim to the state or a political subdivision may be sued for damages and civil penalties. *In re Bank of New York*

10

*Mellon Corp. False Claims Act Foreign Exch. Litig.*, 851 F. Supp. 2d 1190, 1195 (N.D. Cal. 2012); *State rel. Harris v. PricewaterhouseCoopers, LLP*, 39 Cal. 4th 1220, 1223 (2006) (citing Cal Gov't Code § 12650 et seq.). "The statement or conduct alleged must represent an objective falsehood." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008); *see also United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 836 (7th Cir. 2011).[3] Thus, differences of interpretation of imprecise and discretionary language stemming from a disputed legal issue are insufficient to show falsity. *Hagood v. Sonoma Cty. Water Agency*, 81 F.3d 1465, 1477 (9th Cir. 1996); *see also Wilson*, 525 F.3d at 377.

Here, the Complaint repeatedly references how rate plan optimization has a specific meaning in the wireless industry and that Defendant knew of this meaning. (ECF No. 1-2 ¶¶ 6, 21, 25, 134.) More specifically, the Complaint alleges Defendant fulfilled its rate plan optimization requirements with private customers by providing optimization reports. (ECF No. 1-2 ¶ 134.) Taking Plaintiff's factual allegations as true and drawing reasonable inferences in its favor, it is plausible to conclude that Defendant's failure to fulfill its contractual obligations would constitute objective falsity. *See United States ex rel. Lindenthal v. Gen. Dynamics Corp.*, 61 F.3d 1402, 1412 (9th Cir. 1995) (holding the defendant satisfied its contractual obligations and therefore the defendant did not submit any "false or fraudulent" claims).

Accordingly, the Court declines to dismiss the first and second causes of action based on Defendant's argument that Plaintiff's claims fail to plead objective falsity.

       *ii.*  *Scienter*

Defendant next argues that Plaintiff failed to plead scienter. (ECF No. 55 at 19.) Under Rule 9(b), "circumstances constituting fraud or mistake" must be stated with particularity, but "malice, intent, knowledge, and other conditions of a persons' mind," including scienter, can be alleged generally. *See* Fed.R.Civ.P. 9(b); *see also Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 990 (9th Cir.2009). Under the CFCA scienter requirement, "innocent mistakes, mere

---

[3] "The CFCA was modeled on the FCA, and state courts turn to federal FCA case law for guidance in interpreting the CFCA." *United States v. Somnia, Inc.*, 339 F. Supp. 3d 947, 954 (E.D. Cal. 2018) (citing *Mao's Kitchen v. Mundy*, 209 Cal. App. 4th 132, 146 (2012)); *see also Fassberg Constr. Co. v. Hous. Auth. of City of Los Angeles*, 152 Cal. App. 4th 720, 735 (2007).

negligent misrepresentations and differences in interpretations" will not suffice to create liability. *United States v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011).

Defendant argues that Plaintiff does not allege with the requisite degree of particularity that Defendant used palpable lies or other intentional misrepresentations when executing any contracts or submitting invoices for payment. (ECF No. 55 at 20.) Defendant further argues that Plaintiff's own recognition of the extensive reporting efforts Defendant made is inconsistent with knowing fraud. (ECF No. 55 at 20.)

Plaintiff alleges that Defendant knowing failed to fulfill its contractual obligations. (ECF No. 1-2 ¶ 134–135.) Plaintiff further alleges that Defendant regularly complied with contractual optimization provisions for its corporate clients. (ECF No. 1-2 ¶ 6, 25, 99, 134.) The Complaint alleges that Defendant also knew that if it had any questions about the scope of the requirement in the RFPs, it was required to seek clarification. (ECF No. 1-2 ¶ 6, 25, 99, 134.) Yet Plaintiff alleges Defendant proceeded without seeking clarification. (ECF No. 1-2 ¶ 6, 25, 99, 134.)

Plaintiff's factual allegations lend at the very least a reasonable inference that Defendant knowingly and even intentionally disregarded its contractual obligations, which allegedly resulted in significantly overcharging Plaintiff. Furthermore, scienter can be pleaded generally. *See* Fed.R.Civ.P. 9(b); *see also Zucco* Partners, 552 F.3d at 990. Therefore, the Court finds the Complaint sufficiently alleges scienter under the CFCA. *Corinthian Colleges*, 655 F.3d at 996.

### C. Particularity under Rule 9(b)

Defendant argues Plaintiff cannot plead the required fraud with particularity because Plaintiff has not and cannot identify the "who, what, when, where, and how" of the alleged fraud. (ECF No. 55 at 22.) Defendant further contends Plaintiff impermissibly lumps the Carrier Defendants together and fails to articulate how Defendants failed to comply with the contractual provisions. (ECF No. 55 at 22.)

In response, Plaintiff argues it pleaded its claims with particularity. (ECF No. 1-2 ¶¶ 111–115, 130–131.) Plaintiff also argues that separating out the collective and identical allegations against the Carrier Defendants would serve no practical purpose. (ECF No. 56 at 21.)

"Rule 9(b) does not allow a complaint to merely lump multiple defendants together but

requires plaintiffs to differentiate their allegations when suing more than one defendant . . . ." *Swoben*, 848 F.3d at 1184 (internal quotation marks omitted) (quoting *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 997 (9th Cir. 2011)). However, "[t]here is no flaw in a pleading . . . where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." *Silingo*, 904 F.3d at 677 (internal quotation marks omitted) (quoting *Swoben*, 848 F.3d at 1184).

Plaintiff's Complaint alleges each of Carrier Defendants perpetrated its own independent fraud. (ECF No. 1-2 ¶¶ 1, 4–6.) As such, Plaintiff's use of collective allegations is permissible under Rule 9(b) because each Carrier Defendant is alleged to have engaged in precisely the same conduct when Carrier Defendants are referred to collectively in the Complaint. Accordingly, the Complaint's collective allegations are not grounds to dismiss Plaintiff's first and second causes of action.

Further, the Complaint describes the agreements between the parties, the representations Defendant's employees made regarding those agreements, and reasons those representations were false. (ECF No. 1-2 ¶¶ 62, 66, 77, 89, 93–94, 111–115, 130–131.) The Complaint also alleges that Defendant knowingly failed to provide rate plan optimization. (ECF No. 1-2 ¶¶ 97–107, 111–115.) For the foregoing reasons, Plaintiff pleaded its claims with particularity sufficient to survive Defendant's motion to dismiss pursuant to Rule 9(b).

### D. Unjust Enrichment

In a footnote, Defendant asserts Plaintiff's unjust enrichment cause of action must be dismissed because the Complaint is based solely on Defendant's alleged breach of contract. (ECF No. 55 at 17.)

A court may construe an unjust enrichment claim for relief as a quasi-contract claim seeking restitution. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). "But a plaintiff may not 'pursue or recover on a quasi-contract claim if the parties have an enforceable agreement [on] a particular subject matter.'" *Copart, Inc.*, 339 F. Supp. 3d at 983 (alteration in original) (quoting *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012)). Further, to allege a

quasi-contract claim, a party "must plausibly allege the absence of any applicable and enforceable contract provisions, even if in the alternative." *Copart, Inc.*, 339 F. Supp. 3d at 984; *see also Damian v. A-Mark Precious Metals, Inc.*, No. CV 16-7198 FMO (SSx), 2017 WL 6940515, at *7 (C.D. Cal. Aug. 28, 2017) (dismissing unjust enrichment claim with leave to amend because the plaintiff did not allege his contracts with the defendant were void).

Plaintiff expressly alleged the existence of enforceable wireless services contracts with Defendant. (ECF No. 1-2 ¶¶ 157–162.) Plaintiff did not allege in the alternative that the contracts were unenforceable or invalid. (*See* ECF No. 1-2 ¶¶ 163–166.) Therefore, Plaintiff is precluded from asserting its unjust enrichment claim concerning the wireless services. *See Copart*, 339 F. Supp. 3d at 984. Accordingly, Plaintiff's unjust enrichment cause of action is dismissed with leave to amend.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part Defendant's Motion to Dismiss Plaintiff's Consolidated Complaint. (ECF No. 55.) The Court orders as follows:

1. Defendant's Motion to Dismiss as to Plaintiff's first through fourth causes of action is DENIED; and
2. Defendant's Motion to Dismiss Plaintiff's fifth cause of action for unjust enrichment is GRANTED with leave to amend.

IT IS SO ORDERED.

Dated: October 28, 2019

Troy L. Nunley
United States District Judge